UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

——————

SEAN DEDRIC RODEN,

                    Plaintiff,                          Case No. 2:17-cv-9

v.                                                      Honorable Gordon J. Quist

ROBERT HANSEN, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*.  Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, LaCrosse, and Unknown Parties.  The Court will serve the complaint against Defendant Hansen with regard to Plaintiff's First Amendment claim that the seizure of his property and the Class II misconduct ticket were retaliatory.

**Discussion**

I.      Factual allegations

Plaintiff Sean Dedric Roden, a state prisoner currently confined at the Gus Harrison Correctional Facility, filed this *pro se* civil rights action against MDOC officials for conduct that occurred while Plaintiff was confined at the Chippewa Correctional Facility (URF).  Plaintiff brings this action against Defendants Property Room Officer Robert Hansen, Warden Jeff Woods, Resident Unit Manager Michael LaCrosse, and Unknown Parties, all of whom were employed at URF during the pertinent time period.

Plaintiff alleges that between August 1, 2016, and September 20, 2016, Plaintiff was filing a grievance, appeals, and a reimbursement claim against URF property room staff.  On September 26, 2016, prisoner Daniel Hutchins #438751 observed Defendant Hansen in Plaintiff's cell, throwing Plaintiff's belongings around and leaving with several of Plaintiff's items.  When Plaintiff returned from the library, he discovered his personal property scattered all over the floor. Plaintiff also discovered that the following items were missing: 1 KTV color television, 1 Brother ML-500 Wordprocessor / typewriter, 1 Rogue Guitar, 1 Norelco Electric Razor, 1 Digital wrist watch, 16 metered envelopes, and 2 typewriter ribbons and printwheels.  Plaintiff states that Defendant Hansen failed to provide him with any misconduct or Notice of Intent.  Plaintiff filed a grievance on Defendant Hansen.

On October 10, 2016, Plaintiff spoke to Counselor Butler about Defendant Hansen's actions.  Counselor Butler investigated the matter, which prompted Defendant Hansen to write a misconduct on Plaintiff.  On October 13, 2016, Defendant LaCrosse interviewed Plaintiff on a Class II misconduct written by Defendant Hansen.  Plaintiff informed Defendant LaCrosse that Defendant Hansen took his property in order to harass Plaintiff for filing grievances and complaints.  Plaintiff

-2-

also complained that the property seized by Defendant Hansen was not contraband, and stated that Defendant Hansen violated due process by not writing the misconduct ticket until October 10, 2016. Finally, Plaintiff informed Defendant LaCrosse that Defendant Hansen took additional property that was not mentioned in the misconduct ticket.  On October 14, 2016, Plaintiff received a copy of the hearing report, which found him guilty.  The report did not note any of Plaintiff's objections.

Plaintiff alleges that on October 28, 2016, Defendant Hansen wrote a Notice of Intent on his wrist watch, electric razor, and 16 metered envelopes.  Plaintiff states that this occurred after Defendant Hansen was told that Plaintiff had never been heard on the separate Class III misconduct ticket that Hansen had written on October 10, 2016.  Plaintiff claims that as of the date of his complaint, he had never received a hearing on the Class III misconduct or the Notice of Intent.

Plaintiff claims that Defendants' conduct violated his rights under the First and Fourteenth Amendments, as well as under state law.  Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

-3-

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff claims that his due process rights were violated when Defendant Hansen stole his property and Defendant LaCrosse failed to properly investigate the incident or provide Plaintiff with the proper hearing. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent

and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of state officials, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claims regarding the deprivation of his property will be dismissed.

Plaintiff also claims that his due process rights were violated by Defendant Hansen when he fabricated Class II and Class III misconduct tickets, and by Defendant LaCrosse when he

allowed Plaintiff to be found guilty of the misconducts.  A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995).  Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts.  The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct.  (*See* Policy Directive 03.03.105, ¶ AAAA).  Therefore, Plaintiff would not have been denied good time or disciplinary credits as a result of his Class II and III misconduct convictions.  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process.  *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class II and III misconduct convictions.

Plaintiff claims that Defendant Hansen violated his First Amendment rights when he retaliated against Plaintiff by taking his property and writing him false misconduct tickets.  With regard to the Class II and III misconducts, the Court notes that a prisoner convicted of a minor misconduct may be sanctioned with one or more of the following sanctions, with the maximum reserved for only the most serious or persistent violators:  toplock (confinement to quarters) not to

-6-

exceed five days, for all violations arising from a single incident; loss of privileges[1] not to exceed

30 days for Class II misconducts or 15 days for Class III misconducts, for all violations arising from

a single incident; assignment of extra duty, not to exceed 40 hours for Class II misconducts or 20

hours for Class III misconducts, for all violations arising from a single incident; restitution and/or

disgorgement of funds/ill-gotten gains; counseling and reprimand.  Policy Directive 03.03.105,

Attachment D.  Class II misconduct convictions also are used to determine the appropriate security

classification of a prisoner.  *See* Policy Directive 03.03.105, ¶ EEEE.

       The Sixth Circuit has held that 14 days' loss of privileges, a short period in toplock,

and extra duty are *de minimis* sanctions that would not deter a person of ordinary firmness from

pursuing a grievance or other First Amendment protected activity.  *See Ingram v. Jewell*, 94 F.

App'x 271, 273 (6th Cir. 2004) (citing *Thaddeus–X*, 175 F.3d at 396–97).  The Michigan district

courts have followed *Ingram* in cases where the punishment imposed was similar or less severe than

---

[1]Unless otherwise specified, all of the following privileges are lost by a prisoner as a result of a "loss of privileges" sanction:

    A. Day room, activity room, TV room, study room, or other designated area where similar activities occur.
    B. Exercise facilities, such as yard, gym, and weight room/pit.
    C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy.
    D. Out-of-cell hobbycraft activities.
    E. Kitchen area, including microwave, ice machine, and hot water dispenser.
    F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards").
    G. Movies.
    H. Music practice; musical instruments.
    I. Radio, tape player, television, and portable media player as set forth in facility procedures.
    J. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities", except as approved by Warden or designee.
    K. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney.
    L. Visiting. This applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report.
    M. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information).

Policy Directive 03.03.105, Attachment E.

the 14-day loss of privileges imposed in *Ingram*.  *See, e.g., Gordon v. Benson*, No. 1:12-CV-295, 2012 WL 2522290, at *13 (W.D. Mich. June 28, 2012) (Plaintiff's seven-day loss of privileges is not sufficiently adverse to state a retaliation claim); *Patterson v. Godward*, No. 2:08-CV-78, 2012 WL 652470, at *4 (W.D. Mich. Feb. 28, 2012), *aff'd*, 505 F. App'x 424 (6th Cir. 2012) (minor misconduct conviction was not adverse action when the most severe sanction that the plaintiff could have received for a minor misconduct conviction was 15 days' loss of privileges); *Catanzaro v. Carr*, No. 10-CV-14554, 2011 WL 5008380, at *4 (E.D. Mich. Sept. 22, 2011), *report and recommendation adopted*, No. 10-14554, 2011 WL 5008357 (E.D. Mich. Oct. 20, 2011) (a total of 17 days loss of privileges for 2 minor misconduct convictions did not constitute adverse action).

In recent decisions, the Eastern District has specifically distinguished between Class II and Class III minor misconduct convictions, declining to apply *Ingram* to Class II misconduct convictions, given the greater punishments and consequences associated with those convictions.[2] *See Lindensmith v. Walton*, No. CV 14-13342, 2016 WL 398292, at *5 (E.D. Mich. Jan. 25, 2016), *report and recommendation adopted*, No. 14-CV-13342, 2016 WL 627878, at *5 (E.D. Mich. Feb. 17, 2016) (declining to apply *Ingram* to Class II misconducts because they are sent to a prisoner's central file and may result in loss of special disciplinary credits, which could ultimately extend a prisoner's sentence); *Annabel v. Frost*, No. 14-10244, 2016 WL 270294, at *3 (E.D. Mich. Jan. 22, 2016) (applying *Ingram* to Class III misconduct where punishment was limited by policy and there is no future risk of major, significant sanctions such as losing good time credit).

---

[2]At the time *Ingram* was decided, the Michigan Department of Corrections had only two classes of misconduct charges:  major misconducts and minor misconducts.  The policy establishing three classes of misconduct charges took effect on April 9, 2012.  *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105 (eff. Apr. 9, 2012).

Therefore, because the possible sanctions that a prisoner can receive as the result of a Class III misconduct conviction are not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct, Plaintiff's retaliation claim regarding the Class III misconduct ticket is properly dismissed.  However, the Court concludes that under current case law, Plaintiff's claim that the Class II misconduct was retaliatory may not be dismissed on initial review.  In addition, Plaintiff's claim that Defendant Hansen's seizure of his property was retaliatory is not clearly frivolous and may not be dismissed on initial review.

With regard to Plaintiff's retaliation claim against Defendant LaCrosse, however, the Court notes that Plaintiff fails to allege any facts indicating that Defendant LaCrosse's decision on the Class II misconduct was motivated by a desire to retaliate against Plaintiff for his conduct in filing grievances.  Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)).  However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added).  Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough."  Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).  Because Plaintiff's allegations do not support a retaliation claim against Defendant LaCrosse, this claim is properly dismissed.

Plaintiff fails to make specific factual allegations against Defendants Woods and Unknown Parties.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff has failed to allege that Defendants Woods or Unknown Parties engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

Plaintiff is asserting a state law claim pursuant to Article I, Section 17 of the Michigan Constitution, which is the Michigan due process clause.  *See Saxon v. Dept. of Social Services*, 191 Mich. App. 689, 698, 479 N.W.2d 361, 366 (1991).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  To the extent that Plaintiff's complaint presents

-10-

allegations under state law, this Court declines to exercise supplemental jurisdiction and will dismiss the state-claim under 28 U.S.C. § 1367(c)(1) because it "raises a novel . . . issue of State law."[3]  Therefore, this claim will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, LaCrosse, and Unknown Parties will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The state-law claim will be dismissed pursuant to 28 U.S.C. § 1367(c)(1).  The Court will serve the complaint against Defendant Hansen with regard to his First Amendment claim that the seizure of his property and the Class II misconduct ticket were retaliatory.

An Order consistent with this Opinion will be entered.


Dated:  July 28, 2017                              _____/s/ Gordon J. Quist_____
                                                          GORDON J. QUIST
                                                          UNITED STATES DISTRICT JUDGE


---

[3]The Court has been unable to find any state or federal cases applying Article I, Section 17 of the Michigan Constitution, which is the Michigan due process clause, to prisoner misconduct hearings.  As noted above, Plaintiff's federal due process claim lacks merit.  There is no indication that the Michigan due process clause would provide any broader protection to an individual in Plaintiff's situation.  In any event, because of the novelty of the issue, the claim should be addressed by a Michigan court.